## STILLINGS *v.* GIBSON.

One who contracts to haul and deliver lumber on the cars at an agreed price, to be paid when it is sold in market and the avails received, has no lien thereon at common law for his labor.

TROVER, for two car-loads of lumber. In the winter of 1881–2 the plaintiff was engaged hauling lumber for Thompson & Ricker from their mill in Pinkham's Grant to Glen Station on the P. & O. Railroad, a distance of about twelve miles, and loading it on the cars. For hauling, loading, and binding on the cars, he was to receive $4 per thousand, to be paid upon the return of sales. February 8, 1883, the mill of Thompson & Ricker was burned, and thereupon they were sued, and failed. At that time there were at the Glen Station two cars nearly loaded with lumber, part of which was hauled by the plaintiff, and part by other parties. At the time of the fire Thompson & Ricker owed the plaintiff more than $1,000 for hauling lumber as above, and at the same time were owing the defendant $485.78 for hay and other supplies used in their business. The next day after the fire Ricker gave the defendant a written order upon the station agent at Glen Station, as follows:

"Feb. 9, 1883. Mr. Burnell, Dear Sir: I have sold the two car-loads of lumber at your station to James L. Gibson, of North Conway. Please fix up the cars and send on his order wherever he desires them sent, and oblige."

2*

February 12, the plaintiff went to the station and ordered the agent, who was then completing the loading and binding, not to send the cars away, and claimed the lumber to be his, and on the same day notified the defendant of his claim to the lumber. These notices were disregarded. The lumber was sent away the next day under the defendant's instructions, and the proceeds of the sale applied on his debt against Thompson & Ricker. The claim of the plaintiff was that he had a common-law lien upon the lumber for hauling and loading it until he voluntarily surrendered the possession.

*G. W. M. Pitman* and *T. J. Smith*, for the plaintiff.

*Osgood* and *Quarles*, for the defendant.

CARPENTER, J. The plaintiff claims by virtue of a lien at common law, and not under the statute. It appears, from the reported facts and the verdict of the jury, that the plaintiff contracted with the owners of the timber to haul and load it upon the railroad cars at a certain price per thousand feet, to be paid to him "upon the returns of sales,"—that is to say, upon the receipt by the owners of the avails of the sales in market. It does not appear how long a credit was thus given by the plaintiff, nor is it material. A lien at common law is the right of detaining the property of another until some claim is satisfied: possession, actual or constructive, is essential to its existence. Hence, one who is bound by his contract to deliver to the owner property upon which he has expended labor, before the stipulated time of payment arrives cannot be entitled to a lien. The obligation to deliver before payment negatives the right to detain until payment. *Stoddard Manufactory* v. *Huntley*, 8 N. H. 441, and cases cited; *Pinney* v. *Wells*, 10 Conn. 104; *Pickman* v. *Woods*, 6 Pick. 248; *Stickney* v. *Allen*, 10 Gray 352; *Raymond* v. *Tyson*, 17 How. (U. S.) 56; *Chase* v. *Westmore*, 5 M. & S. 187; *Crawshay* v. *Homfray*, 4 B. & A. 50; *Alsager* v. *Dock Company*, 14 Mees. & W. 794; *Foster* v. *Colby*, 3 H. & N. 705.

Inasmuch as the plaintiff had no lien upon the timber before delivery, it is immaterial whether that part of it for which he brings suit had or had not been delivered at the time when he asserted the lien, and for the same reason no question upon the right of stoppage *in transitu* arises.

Whether under the statute (G. L., *c.* 139, *s.* 13) a lien may exist notwithstanding credit is given need not be considered, because the plaintiff at the trial made no claim under the statute, but relied wholly upon a lien at common law.

*Judgment on the verdict.*

BLODGETT, J., did not sit: the others concurred.